Smith *v.* Blaisdell et al.

⟶⟶⊛◉⊛⟵⟵

PHELPS.SMITH *v.* JONATHAN M. BLAISDELL AND JULIUS HOYT.

[IN CHANCERY.]

In the case of a bond, conditioned that the obligor shall execute to the obligee a deed of certain premises upon payment, by a day named, of a specified sum of money and the interest thereon, it being understood between the parties before and at the time of the execution of the bond that the obligee had an equitable interest in the premises, and a right to redeem them by payment of the amount of the obligor's interest in them, and the obligee remains in possession of the premises, paying no rent, and he neglects to make the payment by the day named in the bond, a court of chancery will allow him to redeem by payment at a subsequent day, upon application made in proper season.

But if the obligee, having failed to make payment by the day named in the bond, surrender the possession of the premises to the obligor, and neglect to bring his bill to redeem for nearly six years, the court will grant no relief.

Smith *v.* Blaisdell et al.

Where to a clause for re-entry, in a lease, for non-payment of rent, there is attached a condition that the landlord shall, before entering, give to the tenant in arrear thirty days notice, the landlord has no right to re-enter, unless he give such notice. The right to re-enter for non-payment of rent is not incident to the estate of the lessor at common law, but must be reserved by deed, and all the conditions, or stipulations, annexed thereto must be strictly followed.

Where, in such case, the tenant conveys his interest in the premises to a third person, but still retains the possession, a judgment obtained against him by the landlord in an action of ejectment for non-payment of rent, obtained without giving any notice to the grantee of the tenant, can have no effect, as against such grantee; nor will any subsequent lease, or deed, executed by the landlord, convey any legal title as against him.

But where the grantee of the tenant, in such case, permitted the tenant to retain the possession of the premises, and the tenant, by means of such possession, obtained a credit with the defendant, and procured the lessor to convey the premises to the defendant by perpetual lease, and the defendant executed to the tenant a bond, conditioned for the conveyance of his title to the tenant on payment of a certain sum by a day named, and the tenant, failing to make payment by the day named in the bond, surrendered the possession of the premises to the defendant, who entered, and retained the possession, claiming an absolute right thereto by virtue of the lease to him from the landlord, and the orator, who was assignee of the tenants bond, and who had also purchased the title of the tenants grantee, brought his bill to assert his right within six years from the time the defendant took possession of the premises, the court held that his right was not affected by the lapse of time, but that they would not allow him to redeem, without payment to the defendant of the sum originally advanced to the tenant by the defendant upon the credit of the premises, as specified in the condition of the bond ; and the court refused to compel the defendant to account for the rents and profits during the time he had been in possession, and also refused to allow him interest upon his money during that time.

And this relief was granted to the orator, notwithstanding the deed from the tenant's grantee to the orator was executed at a time when the defendant was in adverse possession of the premises, claiming title thereto by virtue of his lease.

In this case the court refused to allow costs to the defendant,—he having contested the orator's right to redeem,—and they also refused to allow costs to the orator, as he had not, before bringing his bill, actually tendered to the defendant the amount due to him.

This was a bill brought to redeem certain premises by payment of the incumbrance upon them, or to set aside the proceedings by which the incumbrance was created.

The orator set forth in his bill that one Jotham Bush, on the 7th day of April, 1808, conveyed to William Nason, by perpetual lease, fifty acres of land in St. Albans, reserving an annual rent of $6,25, the lessee paying all taxes, which lease contained a clause giving to the lessor the right of re-entry in case two years' rent should be unpaid at the same time,—the lessor giving to the tenant in arrear thirty days notice in writing before re-entering; that William Nason died in 1810, leaving a will, by which he devised to his wife, Mary Nason, an estate during her natural life, and so long as she should continue a widow, in his home farm, which comprised a portion of the said fifty acres, and to Asa Lock and his wife the residue of the said fifty acres during their natural lives, and by which all the said premises, after the termination of the said life estates, were to belong to John Nason; that the said Mary Nason took possession of that portion of the said premises devised to her, and retained possession thereof until her death, which was in 1829; that, on the 18th day of November, 1820, the estate of Asa Lock and his wife in that portion of the premises devised to them became vested in one Eleazor W. Hickok, who received the conveyance thereof as trustee of the said John Nason; and that said Hickok died in 1823, leaving his mother, Betsey Ainsworth, his heir at law.

The orator farther set forth that the said John Nason, on the 21st day of July, 1820, conveyed, by quitclaim deed, all his interest in the said fifty acres, for a valuable consideration, to his sisters, Sally Morrill, Polly Ryan, Peggy Nason and the said Betsey Ainsworth; that in 1827, there then being about $35 of the rent of the said fifty acres in arrear and unpaid, the said Bush commenced an action of ejectment against John Nason, who was then, as tenant to Mary Nason, in possession of that portion of the said fifty acres which had been devised to said Mary; which action was entered at the April Term of Franklin county court in 1827, and was continued to the September Term of the same year; that, during the pendency of said action, John Nason, either for the purpose of defeating the title which he had conveyed to his sisters, as above mentioned, or

26

to raise money for his own use, proposed to said Bush that he would consent to a judgment against him in said action, and would pay the rent in arrear upon said premises, and the cost of suit, provided said Bush would execute to him, or to such person as he should appoint, a new lease of said premises, at a rent of $6,50 *per* year ; and that this proposition was acceded to by Bush, and a judgment rendered in his favor in pursuance thereof, in said action, at the said September Term 1827, and that the rent in arrear and the costs of the action were paid by said John Nason.

The orator farther alleged, that, the said John Nason having agreed with one Israel P. Richardson to advance to him $140 and take a lease of said premises as security therefor, the said Bush, in pursuance of the agreement between him and Nason, executed to said Richardson, his heirs and assigns forever, a lease of said premises, reserving an annual rent of $6,50 ; that it was fully understood between Nason and Richardson that the advance by the latter was merely a loan, and that he should hold the said lease only as security for the re-payment thereof and the interest thereon, and that, upon such re-payment, he should convey said premises to Nason, or to such person as Nason should appoint, and that Nason should retain possession of the premises, paying the rent to Bush, and the taxes thereon ; and that afterwards, Richardson calling for payment of the money advanced by him, Nason made an arrangement with one John Smith, by which Smith advanced to Nason $300 upon the promise of Richardson that he would execute to him, Smith, a quitclaim deed of said premises as security for the re-payment of said sum,—which sum was in part employed by Nason in repaying to Richardson the money which had been previously advanced by him.

The orator farther alleged, that, in August, 1833, Nason, through the agency of the said Smith, applied to the defendant Blaisdell and requested him to loan to Nason $375, being the amount then due to Smith for the sum advanced by him and the interest thereon, and receive, as security therefor, a quitclaim deed of the said premises from Richardson, and also a quitclaim deed from Nason, and execute to Nason a bond, conditioned to re-deed to Nason the premises, upon payment of the said sum of $375 with the interest there-

Smith *v.* Blaisdell et al.

on'; that the defendant assented to this proposition, and, on the 20th day of August, 1833, Richardson executed a quitclaim deed of the premises, and delivered the same to Smith, as his agent; that, in pursuance of the same agreement, Nason, on the 7th day of September, 1833, executed to the defendant a quitclaim deed of the same premises, with the express understanding that this deed, as well as the deed from Richardson, when delivered, should be held by the defendant only as security for the re-payment of the said sum of $375 and the interest thereon; that on the same day, and in order to effectuate and carry out this understanding, the defendant executed his bond to the said Nason, bearing date August 20, 1833,, by which he bound himself, on payment by the said Nason, by the first day of April, 1834, of the said sum of $375 and the interest, to execute and deliver to Nason, on demand thereafter, a good and valid quitclaim deed of the said premises; that on the same day the deeds from Richardson and Nason were delivered to the defendant, and the bond from the defendant was delivered to Nason; that, as part of the same arrangement, Nason retained the possession of the premises, and paid the rents and taxes thereon, until April 1st, 1834; and that on the first day of April, 1834, the defendant, as mortgagee, claiming by virtue of the aforesaid deeds, entered into possession of said premises, and still retained the same.

The orator farther alleged that he, on the 6th day of May, 1836, having purchased the William Nason home farm, to which the said fifty acres had always been attached, and being ignorant of the conveyance of the said fifty acres from John Nason to Sally Morrill, Polly Ryan, Peggy Nason and Betsey Ainsworth, and supposing that John Nason had an undoubted right, as mortgagor, to redeem the said fifty acres by paying to the defendant the amount due to him for his advances to Nason, purchased of said Nason his interest in the premises for a valuable consideration, and the said Nason then executed to him a quitclaim deed of said premises, and also an assignment, in due form, of the bond from the defendant to said Nason, and delivered the said deed and bond to the orator; that afterwards, having ascertained that John Nason had before conveyed the premises to the said Sally Morrill, Polly Ryan, Peggy Nason and Betsey Ainsworth, the orator purchased in their title, for

a valuable consideration, for the purpose of thereby strengthening the title which he had acquired from John Nason, and received quitclaim deeds from them of said fifty acres,—the deed of said Betsey and Peggy bearing date November 21, 1836, and the deed of said Sally bearing date February 14, 1838.

And the orator alleged that he had informed the defendant that he was ready to pay him whatever sum might be due to him, after deducting the rents and profits of the premises, while the same had been in his possession; and, by his bill, he repeated his offer to pay such sum as the court might direct.

The orator alleged, farther, that the title of the said Jotham Bush to the premises in question had become vested in the defendant Hoyt. *

The orator prayed that an account might be taken of the rents and profits of the premises during the time the same had been in the possession of the defendant, and that the defendant might be ordered to convey the premises to him upon payment - of such sum as the court might decree, and for such other and farther relief as to the court might seem proper.

The defendant Blaisdell, in his answer, admitted the preliminary matters set forth in the orator's bill, but denied that Eleazer W. Hickok received the conveyance of the estate of Asa Lock and his wife in the premises in question in any way as trustee of John Nason; he also claimed that the conveyance from John Nason to his sisters, set forth in the bill, was fraudulent, and without any consideration, but made to avoid the payment of his debts; he also denied that there was any understanding between Bush and John Nason, of the character set forth in the bill, in reference to the rendition of the judgment in the action of ejectment, or that there was any agreement between Richardson and Nason, of the character alleged in the bill, or that Richardson received his lease from Bush in any way through the agency of Nason, or as security for any advances made to him,—but claimed that the lease conveyed an absolute title to Richardson, according to its purport.

*It does not appear, from the papers furnished to the Reporter, that the defendant Hoyt ever filed any answer, nor is it shown what proceedings were had in the case in respect to him.

The defendant also denied that any application was made to him, as set forth in the bill, to advance money for Nason, but he alleged that he purchased the title to the premises absolutely and unconditionally of Smith, who was the agent of Richardson, and without any agreement, or understanding that he was to hold the same as mortgagee, or in any manner as pledge, or security, for the payment of any sum of money by Nason; that afterwards he was advised, that, in order to avoid all difficulty as to his title, it would be necessary for him to obtain a quitclaim deed from Nason; that he aocordingly applied to Nason for such deed, which Nason readily agreed to give, saying that he did not suppose that he had any title to the premises; that after Nason had executed and delivered his deed to the defendant, and on the same day, Nason proposed to pay to him, by a day named, the sum which he had paid for the premises, and receive a deed thereof; that the defendant, not being anxious to possess the premises, and feeling friendly to Nason, who was poor, then agreed to sell said premises to Nason upon those terms, and then executed to him the bond set forth in the orator's bill; but he claimed that the only effect intended to be given to the bond was to oblige the defendant to convey the premises to Nason, as a purchaser, upon a strict performance by him of the terms of the bond; and he denied that it was intended thereby to invest any equity of redemption in Nason, or that he ever had any such right, or that this defendant had ever taken possession of said premises as mortgagee; but he alleged that he had always treated said premises as his absolute estate, and always supposed them to be so.

Testimony was taken in the case, the material parts of which are sufficiently detailed in the opinion of the court.

The chancellor dismissed the orator's bill, from which decree the orator appealed.

*Smalley, Adams & Hoyt* for orator.

1. The conveyance from Bush to Richardson was in trust for John Nason.

2. Nason's being in possession, at the time Blaisdell took his deed from Richardson, was notice to Blaisdell that Nason was mortgagor, or that he had some interest in the premises, and was

sufficient notice to put him upon inquiry. Sugd. on Vendors 532. *Allen* v. *Anthony*, 1 Meriv. 283. *Douglas* v. *Whitrong*, cited 16 Ves. 254. *Daniels* v. *Davison*, 16 Ves. 249. *Chesterman* v. *Gardiner*, 5 Johns. Ch. R. 33. *Wright* v. *Bates et al.*, 13 Vt. 348. *Rublee* v. *Mead*, 2 Vt. 544. *Griswold* v. *Smith*, 10 Vt. 452.

3. The taking, by Blaisdell, of a deed from Nason and executing a bond to re-convey on payment of $375 of itself created a mortgage; and the rule "*once a mortgage always a mortgage*" must prevail. *Clark* v. *Henry*, 2 Cow. 324. *Peterson* v. *Clark*, 15 Johns. 206. *Dey* v. *Dunham*, 2 Johns. 189. *Manlove* v. *Ball*, 2 Vern. 83, 84.

4. If Blaisdell is not the mortgagee of John Nason, and the orator has not the right to redeem by virtue of his title derived from Nason,—then we contend that Nason had no interest in the premises at the time he conveyed to the orator, and the orator, not having taken possession under his deed from Nason, is not estopped to deny his title, but may rely on the title derived from Peggy Nason and others. The defendant is in possession under his title derived from Bush; and his rights, as against the tenants under the lease from Bush to William Nason, in 1807, are the same that Bush had, and the defendant must now place himself on the rights of Bush as landlord.

When Bush entered on the premises, in 1827, for non-payment of rent, he had a right to do so. 2 Cruise's Dig. 42, §§ 41, 55. The proceedings in the action of ejectment neither added to, nor diminished, this right. 2 Bridg. Dig. 134, § 225. And that judgment, recovered against John Nason, who was mere sub-tenant at will to Mary Nason, could not in any manner affect the rights of Mary Nason, nor the rights of Peggy Nason and others, under whom the orator claims.

The right of Bush to re-enter stands on ground entirely independent of the recovery in the action of ejectment, and is based on his right to enter, without suit, for a breach of the condition on which the estate was granted. It is true that the lease required him to give thirty days notice in writing before re-entering; but by the statute,—Sl. St. 109,—this preliminary step was dispensed with, and Bush had a right to re-enter without notice.

Bush having entered for breach of the condition, the right of the tenant at law was extinguished, *Chalker* v. *Chalker*, 1 Conn. 79. 3 Cruise 298, §§ 71, 72. Before the statute of 4 Geo. II, if the landlord entered under color of process in an action of ejectment for non-payment of.rent, the tenant might obtain relief by motion in a court of law. *West* v. *Davis*, 7 East. 363. Adams on Ej. 150. *Goodtitle* v. *Holdfast*, 2 Str. 899. 3 Taunt. 401, and cases there cited.

But a court of equity will relieve from the effect of a forfeiture occasioned by non-payment of rent, and permit the tenant to redeem the premises by payment of the rent in arrear. *Hill* v. *Barclay*, 18 Ves. 55, 60. 3 Cruise 298, §§ 71, 72. Com. Land. & Ten. 283, 321, 566. Adams on Ej. 150. 1 Fonbl. Eq. 306, note H. Jer. Eq. 471, 472. *Popham* v. *Bampfield*, 1 Vern. 79. 5 Dane's Abr. 324. *Hutchins* v. *Lewis*, 1 Burr. 614. Ham. Dig. 343. 1 Saund. R. 287, note 16.

*H. R. & J. J. Beardsley* and *Stevens & Seymour* for defendant.

1. Admitting there was a trust subsisting between Richardson and Nason, this cannot affect the defendant, unless knowledge of the trust is brought home to him ; this he denies, and there is no evidence in the case tending to prove it. Neither does any thing appear, by which he can be charged with notice by construction. The record in the action of ejectment showed the title out of Nason, in Bush; the lease from Bush to Richardson transferred the legal title to him. The fact that Nason was in possession from the time that Richardson took his lease until the defendant purchased cannot aid the orator,—for the legal intendment is that during this time he was the tenant of Richardson.

But, by the operation of the deed from Nason to the defendant, Nason's right, or equity, or whatever interest he might have had in the premises, passed from him to the defendant.

2. Does the defendant stand in the light of a mortgagee of John Nason ? This claim can only be sustained upon the ground that the deed from Nason to the defendant, and the bond, under the circumstances of the case, created only a mortgage interest in the defendant. The defendant insists that this was not the object of

the parties, nor the legal effect of the papers; but that a conditional sale and purchase was all that was intended, and all that the papers in terms import.

No precedent or present indebtedness, of any kind, is shown to have existed between the defendant and Nason. It is not shown that there was any negotiation between them for a loan, nor is there any evidence that the defendant's purchase from Richardson was at Nason's request, or for his benefit. The case, then, falls directly within the class of cases denominated conditional sales, or defeasible purchases. In all these cases the condition must be strictly performed, or the right is forever gone. 4 Kent 144. Powell on Mort. 138, note (T.) *Conway's Ex'rs* v. *Alexander*, 2 Pet. Cond. Rep. 482. *Reading* v. *Weston*, 7 Conn. 143. *Baxter* v. *Willey*, 9 Vt. 276.

3. Can the orator redeem the premises from the forfeiture occasioned by the breach of the condition in the lease from Bush to William Nason? We are not aware of a single case, where this power has been exercised in this country; and in England the power has been questioned,—See Jeremy's Eq. 476,—and is never exercised, even there, except with great caution, and in cases where it can be done without prejudice to the landlord.

The peculiar province of a court of equity is to relieve only in cases of fraud, accident, or mistake. Hence we insist that equity should never relieve from a forfeiture of this kind, unless it has been the result of accident, against which the party might not, by the exercise of common prudence, be expected to guard. At all events the party ought not to be relieved from the effects of his culpable, wilful negligence. 4 Kent 130. *Rolfe* v. *Harris*, 2 Price's Exch. R. 207, and note. *Branbridge* v. *Buckley*, Ib. 200.

4. But if there has been no forfeiture, it is ridiculous to talk about relief. If there has been a forfeiture, it is indispensible, in order to relief, that the orator should distinctly set it forth, and make it the basis of relief. Now it is not even alleged in general terms that the estate had been forfeited, nor are there any facts stated, from which a forfeiture can be inferred. The principle is well settled in equity pleadings, that the party must stand, or fall, by the case which he makes in his bill;—his case must appear by direct allegations, and not be left to inference. Mitf. Pl. 30.

*Shepard* v. *Shepard*, 6 Conn. 37. *Hobart* v. *Frisbie*, 5 Ib. 592. *Skinner* v. *Bailey*, 7 Ib. 496. *Cady* v. *Cadwell*, 5 Day 67. *Thomas* v. *Warner*, 15 Vt. 110. *James* v. *Mc Kernon*, 6 Johns. 564. *Dean* v. *Mason*, 4 Conn. 428.

5. ˙If the orator ever had any equity, he ought not to be permitted to enforce it now. The application should have been made within a reasonable time. *Bergen* v. *Bennet*, 1 Caine 20. *Higginbotham* v. *Burnet*, 5 Johns. 184. *Conner* v. *Chase et al.*, 15 Vt. 764.

6. The conveyances from Peggy Nason and her sisters to the orator are void, under the statute of 1807, by reason of the adverse possession of the defendant. The possession and claim of the defendant were in all respects adverse to the rights claimed by the orator and his grantors.

The opinion of the court was delivered by

WILLIAMS, Ch. J. The orator sets forth that he is the assignee of a bond, executed by the defendant Blaisdell to John Nason, on the 20th of August, 1833, in which Blaisdell obliged himself, on the payment by Nason of the sum of three hundred and seventy five dollars by the first of April, 1834, with the interest, to deed to him, Nason, fifty acres of land in St. Albans, which were deeded to Blaisdell that day by Israel P. Richardson. The land was a part of the William Nason farm, and was held by him under a lease from Jotham Bush, providing for the payment of an annual rent of six dollars and twenty five cents. William Nason, who died in 1810, by his will devised his home farm to his wife during her life and widowhood, and this farm included about eighteen acres of the fifty acres before mentioned. The widow of William Nason died in the year 1829. The residue of the fifty acres was devised to Asa Lock and his wife during their lives. Sundry legacies were given in that will to Sarah Morrill, Polly Ryan, Betsey Hickok,—afterwards Mrs. Ainsworth,—and Peggy Nason. The residue of his estate he bequeathed to John Nason, he paying the legacies. The interest devised to Lock and his wife afterwards became vested in one Hickok, who died without issue in 1821, leaving brothers and sisters, and his mother, Betsey Ainsworth, his legal heirs.

On the 21st of July, 1820, John Nason released all his right and
27

interest in the fifty acre lot to his sisters, Sally Morrill, Polly Ryan, Peggy Nason and Betsey Ainsworth. John Nason has always been in the occupation, with his mother, the widow of William Nason, during her life, and his sisters, of the whole of the home farm, of William Nason, until he surrendered the occupation of the fifty acres to the defendant Blaisdell, in May, 1834. Bush commenced an action of ejectment against John Nason in February, 1827, the rent due on his lease having been unpaid, and recovered judgment in September, 1827, and a writ of possession was executed. It appears, however, that there was an understanding between John Nason and the agent of Bush in relation to this recovery, and Bush, at the *request* of Nason, executed a new lease to Israel P. Richardson, on payment of about the same rent, being six dollars and fifty cents. Richardson, in his testimony, says he held this in trust for John Nason, and as security for what he paid for rents to Bush, and for what John Nason owed him. There were some negotiations between John Nason and John Smith, Esq., and then between Nason, Smith and the defendant Blaisdell, which terminated in Richardson's executing a deed to Blaisdell on the 20th of August, 1833, and Blaisdell's executing the bond mentioned before. On the 7th of September of the same year Nason deeded all his interest in the land before mentioned to the defendant. This deed, as well as the one from Richardson and the bond, although the dates are different, were undoubtedly part of one and the same transaction. Having failed to pay the sum mentioned in the condition of the bond, John Nason surrendered the possession to the defendant, who has remained in possession ever since.

The orator, Smith, having purchased the home farm of William Nason, took an assignment of the bond before mentioned from John Nason in April, 1836. Betsey Ainsworth, Peggy Nason and Sally Morrill have also deeded to him all their interest in the fifty acres, they being the heirs and devisees of William Nason, and also holding by grant from John Nason, by his deed of July 21, 1821, before mentioned, and the said Betsey Ainsworth being also one of the heirs of Hickok, before mentioned, who appears to have had the legal title to that part devised to Lock and his wife;—and, in respect to this, it appears that, when Hickok purchased, but a small

share of the purchase money was paid by him, but it was principally paid, or procured to be paid, by John Nason. Having these several legal and equitable interests, the orator, Smith, preferred this bill in December, 1839, for the purpose of compelling the defendant to release to him the land before described, on being paid the amount specified in the condition of the bond before mentioned. He had previously,—in March, 1837,—commenced his action of ejectment in the name of Peggy Nason against the defendant, to recover possession of the same land, and that cause is also before us on exceptions.

A variety of questions have been discussed, both in this case, and in the case at law, which it will not be necessary for the court to decide. Indeed, most of the questions, which arise on this bill, are also involved in the case in favor of Peggy Nason against the defendant, although the parties have to take different views of the same question in the one case, and in the other. It is contended on the part of the orator that the estate, which the defendant received by virtue of his deeds from Richardson and from Nason, was, in consequence of the bond he executed, but in the nature of a mortgage, and that the parties are to be treated in the character of mortgagee and mortgagor ; while it is contended, on the part of the defendant, that he made an absolute purchase, and only contracted to convey to Nason as a purchaser, on his making the stipulated payment.

It clearly was not a technical, legal mortgage ; but we are inclined to the opinion that the parties viewed it, in some measure, in that light. Richardson held the estate as a security, and Blaisdell, by taking the deed from Nason as well as Richardson, executing the bond to Nason of even date with the deed from Richardson, and suffering Nason to remain in possession until the time stipulated, evidently contemplated that Nason had an interest in the estate, that it was subject to redemption, and that he did not consider it as an absolute, unconditional purchase. The court, therefore, would not have considered time so far of the essence of the contract between the parties, as that they would not have relieved Nason from the forfeiture occasioned by his not literally complying with the condition of the bond, by paying the amount due on the very day. Na-

son's remaining in possession paying *no rent*, but being under obligation to pay the amount due to the defendant, with the *interest* thereon, as a condition of the defendant's deeding to him, would undoubtedly have induced a court of equity to have granted him relief, *if applied for in season*. But, inasmuch as he abandoned the possession to Blaisdell, took no steps whatever to pay the amount due, and offers no excuse for not so doing, the court would not have been inclined to sustain this bill, brought after the lapse of so long a time, and relieve either Nason, or the orator, from the consequences of not complying with the condition of the bond, and paying the money when due. The orator has therefore framed his bill with a double aspect, and has set forth other grounds for equitable relief. It becomes, therefore, necessary to examine what title the defendant has to the premises in question.

By the lease from Jotham Bush to William Nason, executed in 1808, the lessor granted to the latter, his heirs and assigns, as long as water runs, grass grows, or the sun shines, the fifty acres in question, on this special condition, " that the said William Nason, his heirs and assigns, shall well and truly, yearly and every year, on the 15th day of November, pay and deliver the sum of six dollars and twenty five cents, and all taxes," &c.; "and, if any one year's rent remain unpaid for more than one year, so that two years' rent becomes due and unpaid, then it shall be lawful for the grantor, his heirs and assigns, after giving the tenant in arrear for rent *thirty days* notice in writing, to re-enter," &c. On the construction of this lease we cannot consider, as has been argued, that the estate thereby granted was limited and at an end on the failure to pay two years' rent; but there was a condition attached to the rent itself, and to the right of the landlord to re-enter,—to wit, that he should give thirty days notice to the tenant; and, if he gave no such notice, he had no right to re-enter;—this principle is found in Co. Lit. 201 *b*. The right to re-enter for non payment of rent is not incident to the estate of the lessor at common law, but must be reserved by deed, and all the conditions, or stipulations, annexed thereto must be complied with.

It appears abundantly from the testimony in this case that Bush, previous to bringing his action of ejectment, had given no notice

whatever to the devisees of William Nason; and the effect of his judgment against John Nason, and the executing a writ of possession, could be nothing more than a voluntary surrender, by John Nason to Bush, of his possession, which was nothing more than that of a tenant at sufferance, as he had long before deeded all his interest therein to his sisters, and as John Nason went back immediately into possession. The relative situation of John Nason and his grantees, under his deed of July 21, 1820, to Sally Morrill and others, remained unaltered. The deeds, therefore, which Israel P. Richardson received of Bush, and which the defendant received of Richardson and John Nason conveyed to him no title, as against the grantees of John Nason under the deed of 1820, and as against the devisees in the will of William Nason.

The defendant Blaisdell can set up no legal title against the grantees of John Nason under this prior deed, and, in a suit at law, their title must prevail against him. There is, therefore, an obvious equity in this case, on the part of the orator, that whatever incumbrance on the land may have been created by John Nason, and whatever embarrassments may have been caused in the title by the proceedings in the action of ejectment, and the lease to Richardson, and the deeds to Blaisdell, should be removed, and the orator be reinstated in all the rights which those, from whom he claims, had, previous to the recovery in ejectment in the name of Bush. And there is also an equity on the part of the defendant that he should not be dispossessed, without being repaid the amount which he has advanced to John Nason. The grantees under Nason's deed of July, 1820, suffered a long time to elapse, before they set up any claim under that deed, or manifested any intention to dispute the doings of John Nason. They might and ought to have known that John Nason, under a claim, had created an embarrassment on their title, and had received credit, both of Richardson, Smith, and the defendant, on the supposition that their title was defeated by the recovery by Bush against Nason, and should have taken steps earlier to set aside that recovery, and the lease to Richardson.

But, inasmuch as Nason was suffered to remain in possession by Richardson and the defendant Blaisdell, as the owner of the estate, paying no rent therefor, and as the lease to Richardson was treated

by him only as a security, and Nason was suffered to treat and negotiate about the land as the owner, and as Blaisdell also suffered him to remain in possession, and gave him a bond to convey, which was uncancelled and left in his possession, and as the orator commenced his action at law, in the name of one of his grantors, within three years after the defendant took possession, and commenced this bill within six years, we think the orator, is not to be precluded from his right by any lapse of time,—he consenting to make such compensation to the defendant, by repaying to him the money which he advanced on the supposition that John Nason was the owner, or otherwise, as the court may think proper, and having offered so to do in this bill. We cannot consider the defendant as a mortgagee in possession, accountable for rents and profits, but we consider him as entering by the permission of John Nason, and receiving the rents and profits in lieu of, and in satisfaction of, the accruing interest on the sum due, and specified in the condition of his bond. Nason had been in possession before, paying no rent, and Blaisdell should also remain there, paying no rent to the orator, and those under whom he claims. The orator must therefore pay to the defendant the sum due on the bond when the defendant took possession in May, 1834, and the defendant must release all title which he derived under the deeds from Richardson and Nason to him. The facts set forth in the bill, and the prayer thereof, are sufficient to entitle the orator to this relief.

It will be seen, that, in this view of the case, we have not thought proper to discuss, or decide, how far equity will relieve a tenant, when the landlord, under a clause of re-entry, has entered for a forfeiture by reason of non-payment of rent. It was said by the Lord Chancellor of Ireland, in the case of *Drought v. Redford*, 1 Molloy 572, that equity always relieved in such cases; and the cases read at the bar are very strong to that effect. The case before us does not call for a decision of that question, nor require us to say under what circumstances a court of chancery would grant, or refuse, relief to a tenant.

An objection has been raised against granting relief to the orator, on the ground that his deeds from Sally Morrill, Peggy Nason and Betsey Ainsworth are void, as the defendant was, at the time of

Smith v. Blaisdell et al.

their execution, in adverse possession. The court have felt there was some difficulty on this account, as there are some decisions which go the length of saying that a decree will not be made for a plaintiff, who states his title under a deed from one out of possession. The consequence, however, of dismissing the bill on this account would be to leave the defendant without any defence at law, and liable to be dispossessed without being repaid the amount he has paid out, and also liable, as a wrong doer, for the rents and profits, and compel *him* to come into chancery to ask the very equity which we are disposed to grant him.

We are of opinion, however, on consideration, notwithstanding this objection, that the orator may maintain this bill. The bond executed by the defendant to John Nason might be assigned, so as to transfer all the interest which he had therein. The orator, by his deeds from Sally Morrill and others, had such a claim to the land that he could maintain an action in their names to recover the possession, which, in the event of a recovery, would enure to *their* benefit. Any charge upon the land, either legal, or equitable, created by the act of John Nason, and acquiesced in by his grantees under the deed of 1820, it became the duty of this orator to pay and extinguish. The equitable right to have this incumbrance extinguished, and to receive a deed from this defendant of all his right derived from Richardson and Nason, was in this orator. As the purchase from Sally Morrill and others may be considered as made for the purpose of confirming the right of the orator, which he derived by his assignment of the bond from Nason, and as there is no proof of any champerty and maintenance, we are not disposed to consider the orator as deprived of any part of his remedy, sought for by this bill, on account of the possession of Blaisdell.

The decree of the chancellor will therefore be reversed, and the case will be remanded to the court of chancery, with directions to enter a decree that the orator, on or before the first day of May next, pay to the clerk, for the use of the defendant Blaisdell, the sum of three hundred and ninety dollars and sixty one cents, and that the defendant Blaisdell, within ten days thereafter, release to the orator all title which he derived under the deeds to him from Richardson and Nason, and give up the possession, without doing

or permitting any waste therein, and that he pay the cost accruing in this court; and no cost will be taxed for either party previous to the decree made by the chancellor. The defendant, by resisting and contesting the right of the orator to redeem, cannot claim the benefit of that rule in equity, which awards to a mortgagee, in most cases, his costs on a bill to redeem. The orator, by not having actually tendered and offered to the defend'ant the amount due in equity, has not entitled himself to be paid his costs.