HYLAND P. STEWART *vs.* WILLIAM MAY.

*Cloud on Title—Right of Landlord to Maintain Bill Quia
Timet—Unauthorized Deed Purporting to
Convey Part of Plaintiff's Land.*

A landlord whose tenant is in possession of the land is author-
ized to maintain a bill to remove a cloud on the title.

The fact that plaintiff's title to certain land had been estab-
lished in an action at law is no reason why he may not main-
tain a bill to remove a cloud subsequently cast upon it by a
deed purporting to convey a part of the land.

Defendant owned a half interest in a lot of ground which had
been conveyed to him and his predecessors in title by a deed
which described the line between that lot and the adjoining
lot owned by the plaintiff as running 49 feet southerly from
a certain point to the end of a wall, and thence on the north
side of a so-called alley three feet wide. Plaintiff's adjoin-
ing lot was described in the deed to him so as to include said
alley. Both of these lots were leased to the same tenants,
who had changed the buildings on the same so as to make
them practically one. Defendant subsequently purchased the
other half interest in his lot and executed a purchase money
mortgage. In the deed and the mortgage, the line between
the lots was described as running 52 feet southerly instead
of 49 feet, and included said alley. Plaintiff filed a bill
alleging that this latter deed included a part of his lot then

in the possession of his tenant and prayed that the same be
declared void as to such part. Upon demurrer, *held,* that the
mere existence of this deed purporting to convey land which
had been conveyed to the plaintiff, creates a cloud on his title,
and authorizes him to maintain the bill, especially since one
of the lines in his deed runs to the defendant's building, and
the alteration in the same would make it difficult hereafter
to show the identity or locality of the call.

*Decided June 1st, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUIS-
LER, J.).

The cause was argued before BOYD, C. J., BRISCOE,
SCHMUCKER, THOMAS, WORTHINGTON and HENRY, JJ.

*Charles F. Harley* (with whom was *J. B. A. Wheltle,* on
the brief), for the appellant.

*Francis K. Carey* and *J. Bannister Hall* (with whom was
*Jas. Piper,* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

It appears from the bill of complaint in this case and the
exhibits filed therewith, that Mary E. Weise, of Baltimore
City, died in 1881, leaving a last will and testament by
which she devised to Thomas Hill "all that piece or parcel of
ground situate at the southeast corner of Liberty and Lex-
ington streets, in the City of Baltimore aforesaid, together
with the improvements and appurtenances," in trust for her
aunt, Maria M. Johnson, during her natural life, and after
her death to her cousin, William Worthington Johnson, his
heirs and assigns, "but in case he died without leaving a
child or descendants of a child living at the time of his death,
then to her cousin, Emma Maria C. Johnson, absolutely."
.By the next item of her will she devised her "house and
lot of ground and premises on Lexington street adjoining the

property described in the aforegoing item of" her will to Thomas Hill in trust for her cousin, Emma Maria C. Johnson, for life, and after her death to her children, but in case she died "without leaving a child or children or descendants of a child living at the time of her decease" "then to" her "cousin, William Worthington Johnson, absolutely."

The following copy of the plat filed with the bill shows the location of these two lots. The lot on the corner of Lexington and Liberty streets is the one now owned by the appellant, and the adjoining lot is now owned by the appellee.

The title to the lot on the corner of Lexington and Liberty
streets, mentioned in the first item of Maria E. Weise's will,
and now owned by appellant, was acquired by Mary De
Charms Garrison as only heir at law of Maria M. Johnson,
who was the sole devisee under the will of Emma Maria C.
Johnson, and in 1893 she and her husband brought suit in
ejectment to recover the adjoining lot, now owned by the
appellee, claiming title to it also as the heir at law of Maria
M. Johnson, devisee under the will of Emma Maria C. John-
son, who, it was claimed, acquired it as only heir at law of
William Worthington Johnson.

In the declaration filed in that case the lot was described
as follows: "Beginning for the same on the southernmost side
of Lexington street at the distance of nineteen feet and eight
inches southeasterly from the southeast corner of Lexington
and Liberty streets, and which place of beginning is de-
signed to be in the centre of the devision wall between the
house erected on the lot now being described and the house
next adjoining on the west, and running thence southeasterly,
bounding on Lexington street, twenty feet and three inches
to the centre of the wall between the house erected on the lot
now being described and the house next adjoining on the
east; thence southwesterly through the centre of said wall,
fifty-two feet more or less, to the north end wall of the
house next adjoining on the south; thence northwesterly, along
said wall forty feet to the easternmost side of Liberty
street, thence northeasterly, bounding on Liberty street, three
feet to the southwest corner of the house adjoining on the
north; thence southeasterly along the south end wall of said
house, eighteen feet and six inches until it intersects a line
drawn southwesterly through the centre of the division wall
first above mentioned; thence northeasterly through the cen-
tre of said wall forty-nine feet more or less to the place of
beginning."

That suit resulted in a judgment in favor of the defendant
in that case, and on appeal the judgment was affirmed in the
case of *Garrison* v. *Hill,* 79 Md. 75, where the Court held

that as William Worthington Johnson died intestate before
Emma Maria C. Johnson, the property passed to those of his
heirs "alive at the happening of the contingency, viz, the
death of Emma M. C. Johnson, unmarried and without
issue."

Appellee claims title to this lot under a dead from Thomas
Ireland Elliott and wife and Philip H. Hoffman and wife,
who acquired title as follows: Thomas Ireland Elliott by
deed from Eliza P. Johnson, only heir at law of William
Worthington Johnson, and Luther Johnson, her husband;
Philip H. Hoffman by deed from Belle Clare Sprague and
others, devisees of Eliza P. Johnson, in each of which deeds
appellee's lot is described as it is in the declaration in the
case of *Garrison* v. *Hill.*

In 1893 Mary DeCharms Garrison and husband conveyed
to the appellant "one undivided half part" of all their inter-
est in the respective estates of Maria E. Weise, Maria M.
Johnson and Emma M. C. Johnson, and in 1894, by a con-
firmatory deed, conveyed to the appellant an undivided one-
half interest in the lot on the corner of Lexington and Lib-
erty streets, and described in said deed as follows: "Begin-
ning for the same at the southeast corner of Lexington and
Liberty streets and running thence southeasterly, bounding
on Lexington street nineteen feet and eight inches to the
centre of the division wall between the house on the lot now
being described and the house next adjoining on the east,
thence southwesterly bounding on the centre of said wall
forty-nine feet to the end thereof, thence northwesterly along
the south end wall of said house on the north side of an alley
three feet wide, eighteen feet and six inches to the eastern-
most side of Liberty street, thence northeasterly bounding
on Liberty street forty-nine feet, more or less, to the place
of beginning."

In this deed the second line of appellant's lot follows
the centre of the division wall between his lot and the
lot of the appellee *forty-nine feet to the end of said division*

*wall,* and the third line follows the south end wall of the building on appellant's lot to Liberty street, and corresponds with the fifth and sixth end lines of the appellee's lot, leaving what is called in this deed an alley, three feet wide, between the lot of the appellant and the property on the south but which is included in the ejectment suit and in appellee's deed as part of his lot.

In 1903 the then owners of appellee's lot leased it to Sigmund Salomon, trading as S. Salomon & Company, for the term of five years, accounting from the first day of February, 1904, which lease, with the consent of the owners of the lot, was subsequently assigned to Max Philipsborn and Gerson Nordlinger, trading as M. Philipsborn & Company, who have continued to pay rent to the appellee since he acquired the lot. Prior to the execution of the lease to Salomon, which was a renewal of a previous lease, he leased the property south of appellee's lot and also the property of the appellant, and with the consent of the owners of the three lots so changed the improvements thereon as to make them practically one building.

On the 10th of October, 1907, the appellant purchased from Mrs. Garrison and her husband the remaining undivided one-half interest in the corner lot, and on the same day executed to Mrs. Garrison a mortgage on the property to secure the payment of $20,000.00, in which deed and mortgage the lines of the lot, instead of running to the end of the division wall between appellant's and appellee's lot, 49 *feet,* and thence along the south wall of appellant's building to Liberty street, as in the deed of 1894, are made to run "fifty-two feet, more or less, to the *northern wall of the property adjoining on the south as now situate,* thence northwesterly along the north side of said wall eighteen feet, six inches, more or less, to Liberty street," so as to include in appellant's lot that portion of appellee's lot fronting three feet on Liberty street, between the south wall of appellant's building as it originally stood and the property on the south.

The bill further states that the appellee is informed and

believes that Philipsborn and Nordlinger have renewed the leases from the owners of the adjoining properties, and that the appellant is claiming title to that part of appellee's lot included in appellant's deed of 1907; that Philipsborn and Nordlinger are desirous of renewing the lease for appellee's lot, but that inasmuch as the appellant is claiming title to a part of appellee's lot, and has color of title thereto under said deed, he refused to renew the lease to them unless the lease contains a full description of his property; that Philipsborn and Nordlinger, acting under the advice of appellant, their counsel, have refused to execute a lease containing a full description of appellee's property, and that the claims of the appellant and his advice to appellee's tenants cast a cloud on the appellee's title to that part of his lot included in appellant's deed of 1907, to the great damage of the appellee.

The prayer of the bill is that the appellee's title to that part of his lot included in the appellant's deed may be quieted and that the cloud cast thereon by said deed and the claims and actions of the appellant may be removed, and that the mortgage from the appellant to Mary DeCharms Garrison may be declared void as to the part of the appellant's lot included therein, and for general relief.

The defendants, Hyland P. Stewart, Esq., and Mary DeCharms Garrison, Mortgagee, demurred to the bill, and this appeal is taken by the defendant, Stewart, from the order of the Circuit Court of Baltimore City, overruling their demurrer.

The appellant contends (1) that there is no allegation that the plaintiff was in actual possession of the property, "but on the contrary the bill and exhibits show that he is not in actual possession," and that possession by a tenant is not sufficient; (2) that this Court having already determined the question of title to plaintiff's lot, "no further adjudication is necessary or proper," and (3) that the allegations of the bill, together with the exhibits, show so clearly that the alleged claim of the defendant is invalid, that the deed and acts of the defendants do not constitute a cloud on plaintiff's title.

The averments of the bill, which was filed February 29th, 1908, that appellee's property was leased in 1903, for .five years, accounting from the first day of February, 1904, to Sigmund Salomon, and that he, with the consent of the owners, assigned the lease to Philipsborn and Nordlinger who have continued to pay rent to the appellee since he acquired the property, and who, at the time of the filing of the bill, were desirous of entering into a contract with the appellee for a renewal of the lease, show that the property was in possession of appellee's tenants, and counsel for the appellant, relying on the case of *Oppenheimer* v. *Levi,* 96 Md. 296, insists that the possession of Philipsborn and Nordlinger is not sufficient.

In *Oppenheimer* v. *Levi,* the Court held that it was not necessary in that case to allege and show possession by the plaintiff. The learned judge who wrote the opinion, after stating the general rule "that those only who have a clear legal and equitable title to the land, connected with the possession, have a right to claim the interposition of a Court of equity to give them peace, or to dissipate a cloud on title," does say, in passing to the grounds on which relief should be granted in that case, that the cases elsewhere holding that actual possession by a tenant is equivalent to possession by the landlord "are not consistent with the decision in" *Stewart* v. *Meyer,* 54 Md. 467, as explained in *Textor* v. *Shipley,* 77 Md. 473. It will be found, however, upon careful examination of these cases, that they do not support the contention of the appellant.

In *Stewart* v. *Meyer,* the bill was filed by the owners of the reversion and the property was in the possession of receivers, and the Court, referring, to the plaintiffs, said: "They are interested only in the annual ground rents, and in the estate of the reversion; they are not entitled to the possession, and could not, therefore, sue in ejectment for the recovery of the property. Under the circumstances of this case, without resort to proceedings like the present, the par-

ties would be without adequate remedy for relief against the effect of the *prima facie* title in the purchaser. In such cases, equity asserts complete jurisdiction, to remove the cloud from the title of the property involved, and to prevent unnecessary and vexatious litigation."

In *Textor* v. *Shipley* the property had been sold for taxes and purchased by Shipley, who leased it for ninety-nine years to Elizabeth Black, and three years after the sale Textor, the former owner of the reversion, brought suit for the purpose of removing the cloud cast on his title by the tax sale and conveyances. The Court, after holding that there was no averment in the amended or original bill that plaintiff was in possession of the property at the time the bill was filed, says: "He does avers in the amended bill, that he entered into possession of the annual rent or reversion, and that the assignee of the leasehold interest duly attorned to him by the payment of the annual rent accruing under the lease. These averments may be true. The appellant may have acquired the legal title to the property by the deed from Rennert and wife to him, and he may have been at one time in possession through Black, the assignee of the leasehold interest, because the possession of the lessee was the possession of the lessor or reversioner. But the several deeds filed by the appellant as exhibits and part of his bill, show that the entire fee in the property had been sold for the payment of City taxes, which were paramount liens on the property before the appellant acquired the legal title under Rennert's deed. The title of the appellant to the reversion was subject to this lien; and when the lien was enforced by due and proper proceedings, the title of the appellant in the reversion and the title of the owner of the term of years or leasehold interest, were both gone. And this being so, the appellant had neither the legal title, nor had he possession. The legal effect of the tax sale which was reported and ratified by the Circuit Court, was to vest, *prima facie,* the fee simple title in Hopkins, the purchaser, and his grantees. * * * If the proceedings under the

tax sale be defective and irregular, as alleged, the remedy
for the appellant is by an action of ejectment."

In *Oppenheimer* v. *Levi,* the defendant, Levi, was in pos-
session, claiming the fee by virtue of a tax sale and subse-
quent assignment to him, when the bill was filed by the own-
ers of the reversion.

So in neither of these cases was the property in possession
of the lessee of the plaintiff, and they cannot, therefore, be
regarded as authority for the proposition that possession by
a tenant is not sufficient to enable the landlord to maintain a
bill to remove a cloud on his title.   On the contrary, in
*Textor* v. *Shipley,* the Court, recognizing the rule that the
possession of a tenant is the possession of his landlord, says :
"The appellant may have acquired the legal title to the prop-
erty by the deed from Rennert and wife to him, and he may
have been, at one time, in possession through Black, the as-
signee of the.leasehold interest, *because the possession of the
lessee was the possession of the lessor or reversioner."*   And
in the case of *Polk* v. *Rose,* 25 Md. 153, cited by JUDGE AL-
VEY in *Stewart* v. *Meyer,* the suit was brought by the owners
of certain houses and lots in Baltimore City, then in posses-
sion of their tenants, against the defendant, who claimed
under a tax sale, made prior to the enactment of the provi-
sions of the Code making them, when ratified by the Court,
*prima facie* valid.   The Court, after stating that "The *onus*
is upon the purchaser at a tax sale, he must establish affirma-
tively that the officers acted strictly in conformity with the
law," held the sale void, and then disposed of the question of
jurisdiction as follows : "The bill in this case, is a bill *quia
timet.*   The complainants allege that the defendant is vexa-
tiously using his pretended deed and title thereunder against
them, not only interfering with their tenants by demanding
rent from them, but in throwing a cloud or suspicion over
their title.   In such a case, a Court of equity may decree
that the deed of the party thus acting be cancelled.   See
1 *Story's Eq.,* sec. 694, also *Hollander* v. *Baltimore,* 11 Md.

197.   In this case, this Court fully recognized the jurisdiction of Courts of Equity, because it will prevent a multiplicity of suits, and will not allow a title otherwise clear to be clouded by a claim which cannot be enforced either at law or in equity.   In the case at bar, the appellees could not resort to an action at law, because they had not been dispossessed. * * * Though there is no special prayer in the bill for a cancellation of the appellant's deed, we think the Court below had authority to extend that relief under the general prayer for relief."

In Vol. 17 of *Ency. Pl. and Prac.,* 317, under the title "Quieting Title-Removal of Cloud," a long list of authorities is given in support of the statement that "Actual Possession by a tenant or agent is equivalent to actual possession by the landlord or principal for the purposes of the suit, and the statutes of some States expressly provide that such possession shall be sufficient."

In this case; as in *Polk* v. *Rose,* the appellee, being in possession through his tenants, cannot resort to an action of ejectment, and there is no reason why a Court of equity should withhold its aid if his bill, in other respects, presents a proper case for relief.

In regard to the second contention of the appellant very little need be said.   As a bill *quia timet,* or to remove a cloud upon the title to property, cannot, as a general rule, be maintained without clear proof of both possession and legal title in the plaintiff (*Polk* v. *Pendleton,* 31 Md. 118; *Textor* v. *Shipley, supra*), the fact that the plaintiff's title has already been determined in a Court of law, would seem to strengthen his claim to the aid to a Court of equity to remove a cloud subsequently cast on it.   We do not regard the case of *Clayton* v. *Barr,* 34 West Va., 290, referred to by counsel for the appellant, as an authority to the contrary.   The bill in that case was demurred to on the ground that, plaintiff not being in possession, the suit was in effect a suit to try the legal title to land, for which there was an adequate remedy at law, and the Court sustained the demurrer on *that ground.*

The remaining contention of the appellant, viz, that the bill and exhibits show such a clear title in the appellee that the deed and mortgage of 1907, and the acts of the appellant, do not cast a cloud on his title, is sufficiently answered by the case of *Polk* v. *Rose, supra,* where the Court held that notwithstanding the burden was on the defendant to show a valid title under the tax sale, his tax deed and his conduct in interfering with plaintiffs' tenants cast a cloud on their title. In the case of *Houghteling* v. *Walling,* 48 Hun. 104, relied on by the appellant, the deed was from a stranger to the title, and the grantee, the Court said, had never set up or claimed title to the property, and it was under such circumstances that the Court held that "the mere existence of a deed purporting to convey certain premises, but accompanied by no circumstances giving it apparent validity, would not operate as such a cloud upon the title as to justify the interposition of a Court of equity." In this case the plaintiff alleges that the appellant is not only claiming title under his deed but is interfering with his tenants.

But there is another reason why the Court should grant relief. The appellant is not making claim to the whole of the appellee's lot, but is claiming that it does not include the strip of land between the south wall of his building, as it formerly stood, and the property on the south. The fourth line in the appellee's deed runs to the corner of appellant's building, and the fifth line follows the south end wall of said building, and the averment of the bill is that the improvements on said lots have been so altered as to make them all practically one building. The well established rule in this State and elsewhere is that in locating lands calls for monuments prevail over the courses and distances. *Rogers* v. *Raborg et al.,* 2 G. & J. 54; *Heck* v. *Remka,* 47 Md. 68; 4 *Am. & Eng. Enc. of Law* (2 ed.), 764. As the buildings have been changed as to make the improvements on appellee's and appellant's lots and the lot on the south "practically one building," it would probably be necessary, as the appellant is claiming title to the strip of land between the wall of his building and

the wall of the building on the south, to offer evidence as to the identity or location of the monuments called for in the description of appellee's property, in order to establish his title to the strip of land in question, and the rule, as stated in 6 *Am. & Eng. Ency. of Law,* (2nd ed.), 157, is that: "Where there is a defense in law and which rests upon evidence which may be lost by lapse of time or the imperfections of memory, the Court will entertain the litigation without waiting for the assertion of the claim."

"Anything is a cloud which is calculated to cast doubt or suspicion on the title, or seriously to embarrass the owner, either in maintaining his rights or in disposing of the property" (7 *Cyc.,* 256), and we think that the deed and mortgage of 1907, and the acts of the appellant, are calculated to cast a doubt on appellee's title, and to embarrass him in maintaining his rights, and that under the averments of his bill he is entitled to relief, and will therefore affirm the order overruling the demurrer.

> *Order affirmed with costs and case remanded.*