HYLAND P. STEWART AND MARY DeCHARMS GAR-
RISON vs. WILLIAM MAY.

*Cloud on title: right to maintain bill to remove—; possession;*
*tenant in possession; recording of deeds when grantor*
*has no title; bill to set aside. Easements;*
*cesser of use.*

Placing on record a deed and mortgage conveying property to
which the grantors and mortgagors had no right, is liable
to cause a cloud upon the title to the property, and by a
proper proceeding such deeds may be declared null and void.
p. 16

Possession by a tenant is such possession as will enable the
landlord to maintain a bill to remove a cloud upon the title.
p. 17

When a owner owns two properties, no use of one property by
him can give rise to an easement by prescription over the
other.　　　　　　　　p. 18

A party can not have an easement over his own land.  pp. 18-19

A cesser of a use, coupled with an act clearly indicating an
intention to abate the right, has the same effect as an express
release of an easement without any reference to time.　p. 19

Certain parties, owners of a corner lot, claimed an easement
in the use of an alley in the rear of the property and leading
to the street from an adjacent lot; the fact that they had
long closed up a window overlooking the alley; that they
no longer let their eaves drip on the alley, and they had
extended their building so as to close the alley operated as
a cessor of the easement. ·　　　　　　pp. 19-20

*Decided November 20th, 1912.*

Appeal from the Circuit Court of Baltimore City (HAR-
LAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Burke, Thomas, Pattison and Stockbridge, JJ.

*Charles F. Harley* (with *Harley & Whettle* and *Burdette F. Webster* on the brief), for the appellant.

*Francis J. Carey* and *Francis King Carey* (with *Carey, Piper & Hall* and *Francis J. Carey* on the brief), for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This case was previously before us on appeal from an order of the Circuit Court of Baltimore City overruling a demurrer to the Bill of Complaint, and is reported in 111 Md. 162. We affirmed the order of the lower Court and remanded the case for further proceedings. After it was remanded, the defendants answered and testimony was taken in open Court. A decree was passed declaring that the deed from Mary DeC. Garrison to Hyland P. Stewart, dated the 10th day of October, 1907, was null and void in so far as it purported or attempted to convey title to the southernmost three feet of the lot described in the deed. and that the title to the said strip of ground three feet wide is in the plaintiff in fee simple, free and clear of any easement appurtenant to the defendant's lot, and the mortgage from Stewart to Mrs. Garrison of the same date was likewise declared to be null and void as to those three feet. From that decree this appeal was taken.

The object of the bill filed by the appellee was to remove the cloud on his title to the three feet, caused by the deed and mortgage referred to above, and as we held the bill sufficient to entitle him to relief on the facts therein alleged, the real question now to be determined is, whether the answers and testimony present such different facts or con-

ditions from those alleged in the bill as preclude the appellee from the relief sought.

In the case of *Garrison* v. *Hill,* 79 Md. 75, which was decided in 1894, Mr. Stewart was counsel for Mrs. Garrison. She had acquired the property on the southeast corner of Liberty and Lexington streets in the City of Baltimore (spoken of in this case as No. 47 Lexington street) as the heir at law of Maria M. Johnson. The two properties spoken of in this case as Nos. 45 and 47 belonged to Maria E. Weise, who died in 1891, leaving a last will and testament by which she left "all that piece or parcel of ground situate at the southeast corner of Liberty and Lexington streets in the City of Baltimore aforesaid, together with the improvements and appurtenances" to Thomas Hill in trust for Maria M. Johnson for life, and after her death in trust for William W. Johnson, his heirs and assigns, but in case he died without leaving a child or descendant, then the property was to go to Emma Maria C. Johnson. The property became vested in the latter person, who made Maria M. Johnson her sole devisee and Mrs. Garrison inherited it as her only heir at law.

By the next item of her will, Maria E. Weise left all the rest, residue and remainder of her estate "inclusive of my house and lot of ground and premises on Lexington street adjoining the property described in the aforegoing item of my will and which is known as No. (96) ninety-six," to Thomas Hill in trust for the purposes therein named. The new number was 45 Lexington street. Mrs. Garrison contended in the case in 79 Md. that No. 45 ultimately became vested in Emma Maria C. Johnson, and that she inherited it as she had done the other property, but we held that it had not become vested in Emma M. C. Johnson, and hence did not pass upon her will to Maria M. Johnson, whose heir Mrs. Garrison was.

It will be observed that when Maria E. Weise died in 1881 she owned the two properties, and although the will

does not show how they were divided in reference to the three feet which were included in the alley in question, the conduct of the parties throws much light on the subject. The suit in ejectment, reported in 79 Md., was instituted in 1893, and Mr. Stewart, one of the present appellants, was one of her attorneys, and signed the declaration. In that declaration the property sued for, which it must be remembered is what is now owned by the appellee, was described as one parcel, as follows: "Beginning for the same on the southernmost side of Lexington street at the distance of nineteen feet and eight inches southeasterly from the southeast corner of Lexington and Liberty streets, and which place of beginning is designed to be in the centre of the division wall between the house next adjoining on the west, and running thence southeasterly, bounding on Lexington street, twenty feet and three inches to the centre of the wall between the house erected on the lot now being described and the house next adjoining on the east, thence southwesterly through the centre of the said wall fifty-two feet, more or less, to the north end wall of the house next adjoining on the south, thence northwesterly along said wall forty feet to the easternmost side of Liberty street, then northeasterly, bounding on Liberty street, three feet to the southwest corner of the house adjoining on the north, thence southeasterly along the south end wall of said house, eighteen feet six inches until it intersects a line drawn southwesterly through the centre of the division wall first above mentioned, thence northeasterly through the centre of said wall forty-nine feet, more or less, to the place of beginning."

The declaration thus clearly recognized the alley as a part of what is spoken of as No. 45 Lexington street. If Mrs. Garrison, as heir of Maria M. Johnson, had acquired the alley under the devise in the will of Maria E. Weise of the property at the corner of Liberty and Lexington streets, why would she have sued Thomas Hill for the alley as a part of No. 45 ? Or, if the alley was hers through that

devise, can it be supposed that when it was determined by
the decision in 79 Maryland she had not inherited the other
property (No. 45), her attorney would not at least have
endeavored to recover the alley? But in addition to that,
Mrs. Garrison and her husband made a deed to Mr. Stewart
on May 7th, 1892, by which they granted an undivided half
part or moiety of all their right, title and interest in and
to the respective estates of Maria E. Weis, Maria M. John-
son and Emma M. C. Johnson, and then on the 4th day of
December, 1894, they made a confirmatory deed to him in
which they referred to the former conveyance being made
"with no exact description in said deed of the property
hereinafter mentioned, and for the purpose of confirming
said deed and of giving an accurate description of this par-
ticular part of the property mentioned in said deed, these
presents are executed," and then conveyed an undivided
half interest in and to the property by courses and distances,
which limited the lot to 49 feet in depth and called for
running along the south end wall of the house on No. 47,
"and on the north side of an alley three feet wide"—thus in
terms excluding the alley from the conveyance, and added:
"Being the same piece or parcel of ground, the title to which
was acquired by Mary DeCharms Garrison as the only heir
at law of Maria M. Johnson, who was the sole devisee under
the will of Emma M. C. Johnson * * * the said Emma M. C.
Johnson having acquired the same in fee as devisee under the
will of Maria E. Weise."

It was thus admitted by that deed, executed as late as
December 4th, 1894—the same year that the ejectment suit
was decided against Mrs. Garrison — that the property
acquired by Emma M. C. Johnson, as devisee under the will
of Maria E. Weise, was forty-nine feet in depth and was
on the north side of the alley. A deed made by Eliza P.
Johnson and husband to Thomas Ireland Elliott for an undi-
vided half interest in No. 45 was dated July 23, 1894, and
the property conveyed thereby was described precisely as it

was in the declaration. Eliza P. Johnson was the only heir
at law of William W. Johnson, and it was decided in 79
Md. that this property descended to his heirs who were liv-
ing at the death of Emma M. C. Johnson. There can,
therefore, be no doubt that as late as 1893 and 1894, the
owners of those two lots understood and believed that the
strip included in the alley belonged to the property referred
to as No. 45, and it is equally certain that Mr. Stewart so
thought, as otherwise he would not have *included* the alley
in the ejectment suit and have *excluded* it in the confirma-
tory deed to himself, which was made for the special purpose
of giving a proper description of the property spoken of as
No. 47. It was certainly a very natural and wise division
of the properties, for inasmuch as No. 47 was on the corner,
and had an entrance from Liberty street, as well as from
Lexington street, and as No. 45 was erected between two
houses on Lexington street, the alley leading to Liberty street
from the rear of this lot was of great value to it, as the
properties then stood.

Then when the devisees of Eliza P. Johnson conveyed the
other half of No. 45 to Philip H. Hoffman, on May 8, 1905,
the property was described as in the declaration, and the
case of *Garrison* v. *Hall,* 79 Md. 75, was referred to in the
deed. But when on the 10th day of October, 1907, Mr. and
Mrs. Garrison conveyed the other undivided half to Mr.
Stewart, in fee simple the description of the lot included the
alley, making the lot 52 feet in depth, instead of 49, and
calling for the northerly wall of the house adjoining on the
south.

It cannot be doubted from the testimony in the record
that at least as far back as 1887, when Mr. Struven became
tenant of No. 45, the strip included in the alley was regarded
as part of No. 45 Lexington street. Indeed from the testi-
mony of Samuel Bealmear, a witness produced by the appel-
lants, it may be inferred that such was the case from the
time he went into No. 47, which was in 1868. He extended

the house on that lot to the alley, and in his testimony the following appears: "Have you any recollection as to whether there was any use made of the alley by the corner house while you were there? A. I really cannot remember. I do not know that I was ever back there but twice. I was in there six years, and I do not think I was ever back in the yard twice during that time. Q. But you could go back there if you wanted to? A. Yes, but I had not occasion to go back there." If the alley was in any way appurtenant to No. 47, or of any use to it, surely he would have gone into it twice in six years, especially as he made the addition extending to the alley. It may be said in passing that his evidence would seem to conclusively show that there was no door or other exit leading into the alley from No. 47. He did not remember any and if there had been he would certainly have used it twice in six years.

When the owners of No. 45 leased the property, it was doubtless not deemed necessary to particularly mention the alley, as we are satisfied from the evidence that it was connected with the yard of No. 45, and it was apparent that it belonged to and was a part of that property. The evidence of Mr. Struven, who rented No. 45 from 1887 until about 1892, and Mr. Hall who occupied No. 47 about that time, both of whom were familiar with the properties for a number of years, is too clear to admit of any doubt about that. The record in our judgment proves beyond question that Mrs. Garrison had no right to convey, and Mr. Stewart, who was familiar with the facts, had no right to mortgage the strip included in the alley. It is equally clear that placing the deed and mortgage on record was calculated to create a cloud on the title of the appellee. If they were permitted to remain in force as to the alley, without objection by the appellee, what was at the time no title in the appellants when the deed and mortgage were given might in the course of time ripen into one which could not be successfully assailed.

It was decided in the former appeal that possession by a tenant was such possession as would enable the owner to maintain a bill of this character.   The tenants in possession of this building must be held to be the tenants of the appellee, to the extent of the property spoken of as No. 45 Lexington street, including the alley which we have already said was regarded as a part of No. 45.   The appellants certainly knew that the owners of No. 45 claimed it, and they also knew that they had failed to recover it in the ejectment suit a year or two before the new building was erected.   If it was intended to surrender the title to it when the new building was erected, it cannot be possible that JUDGE ELLIOTT, as owner of an interest in No. 45, and Mr. Stewart as part owner of No. 47 and as attorney for Mrs. Garrison, for whom he was acting in connection with the new arrangement, would have thought it unnecessary to make it a matter of record.   The litigation between the parties was too recent to be forgotten.   Mr. Stewart in answer to the question, "There was a little feeling between the owners of 45 and 47, as a·result of that ejectment suit? replied, "More than a little; it was very hot." It would, therefore, be utterly unreasonable to support that JUDGE ELLIOTT, who had acquired a half-interest in No. 45 after that. litigation had ended, would have given away the three feet which would be so essential to his property, if it became necessary to rent No. 45 separately when the lease to Salomon & Co. terminated.   It would likewise be quite as difficult to believe that if he was willing to do so Mr. Stewart, the then owner of the half-interest in No. 47, and the attorney for the owner of the other half, would not have obtained a deed or some satisfactory evidence of the surrender of the alley.   The testimony of JUDGE ELLIOTT shows that in making leases and in dealing with the tenants he kept constantly in mind the possibility of No. 45 again being rented as a separate property.   Indeed the owners executed separate leases for their respective properties, although they were of course aware

that the tenants were arranging with the owners of adjoining properties and doubtless knew how the builders were being constructed, but JUDGE ELLIOTT representing himself and to some extent his co-owner of No. 45, always kept in mind the possibility of that property having at the end of his lease to be rented separately and required the tenants to covenant to restore the walls. It would perhaps have been a wise course to have had an agreement, as subsequent events proved, for about a year after the lease was made the deed and mortgage were executed by which it was attempted to convey what the parties must have known they had no right to convey, namely, a fee simple title to that alley.

The only remaining question we will consider is, whether the decree should have declared that the title to the strip of ground three feet wide is in the plaintiff in fee simple, free and clear of any easement appurtenant to the defendant's lot. The decided weight of the evidence is to the effect that the only opening in the wall on the alley was a window fourteen inches square, which was either in the second story or near the ceiling of the first. Then there was some testimony that the eaves of the roof projected over some part of the alley, although the extent of . the projection is wholly indefinite, and that some water drained into it from the house on No. 47. Any other uses of the alley by the owners or tenants of No. 47 attempted to be shown are so uncertain and indefinite as not to require any further reference to them by us. It would be impossible to decide from the evidence how far, if at all, the eaves of the roof of the house on No. 47 extended over the alley, but if it be conceded that they did project over it to some extent, that there was an opening in the rear wall about fourteen inches square and that some water did run from that house into the alley, what rights have the appellants now?

It must not be forgotten that until Maria E. Weise died in 1881 she owned both properties and therefore no easements were acquired by prescription. A party cannot have an ease-

ment in his own land. *Oliver* v. *Hook,* 47 Md. 308, *Mitchell* v. *Scipel,* 53 Md. 263. Between the death of Miss Weise, in 1881, and the tearing down of the house when the present building was erected, in 1895 or 1896, sufficient time did not elapse to give the right to the owners of No. 47 by prescription. But even if it be conceded for the purposes of the case that there were such apparent easements existing that the benefit of them passed to the owner of No. 47, under the principles announced in such cases as *Burns* v. *Gallagher,* 62 Md. 462, and *Eliason* v. *Grove,* 85 Md. 215, which we need not determine, was there not an abandonment of them when the appellants tore the old house down and erected the present building and undertook to convey the alley in fee? In *Vogler* v. *Geiss,* 51 Md. 407, JUDGE ALVEY said: "It is now very well settled, by authorities of the highest character, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts *in pais,* and without deed or other writing. * * * A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time." In *Canton Co.* v. *B. & O. R. R. Co.,* 99 Md. 218, that was repeated. See also, 14 *Cyc.* 1188, 10 *Am. & Eng. Ency. of Law,* 437.

The appellants had undoubtedly ceased to make any use of what they claim to have been easements for at least twelve years when this bill was filed, and had voluntarily torn the house down, in which the little window was, on which the alleged projecting eaves were, and from which the water was claimed to have been drained into the alley. But that is not all, they had built over the alley in such way as to make it impossible for them to enjoy what they called easements, as they claim they had the right to use them. Those facts might be sufficient to prove an intention to abandon and an actual abandonment, but they did not stop there. One of them conveyed to the other, in fee simple, the very strip

of land in which they claim the easements existed, and the other conveyed by way of mortgage the same land, describing it as in fee simple, and in their answers they admit that Stewart is claiming title to the alley and set out at length the grounds on which they rely for their claim. It would be difficult to prove acts of abandonment of easements of a more decisive character, or which more clearly indicate an intention to abandon the rights, if they existed. They even claim that they have been paying the taxes on the strip embraced in the alley for many years, and in short claim to own the property in fee. So without deeming it necessary to determine whether there once were such easements in the alley, we are of the opinion that, if there were, the appellants have abandoned them.

We will only add that we do not in any way determine what the rights of the respective parties may be, in case the present arrangement of the buildings is terminated, as that is in no wise involved in this case. Nor will we discuss the exceptions to the testimony filed, as they could not affect our conclusion.

> *Decree affirmed, the appellants to pay the costs above and below.*