ISAAC H. ROSENBERG *v.* LOVINA M. D. TAFT ET AL.

January Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 3, 1920.

*Landlord and Tenant—Right of Tenant to Sublet—Demand of Rent Essential to Right of Re-entry—Indivisible Reservation of Rent Not Severed by Severance in Occupancy—Acceptance of Partial Payment of Rent Affirms Tenancy—*

*Waiver of Forfeiture—Tender by Check—Unlawful Attornment by Subtenant to Chief Landlord—Disturbance of Lessee's Possession by Lessor—Recognition by Subtenant of Original Lessor as Landlord—Effect of New Lease by Landlord on Existing Lease—Surrender by Subtenant to Chief Landlord—Intent to Oust Presumed from Unlawful Acts of Landlord—Acts of Subtenant Operating as Disclaimer of Relationship with Landlord—Acts of Landlord Constituting Eviction—Acts of Landlord Suspending Payment of Rent—Possession of Subtenants, Possession of Their Lessor.*

1. In the absence of a provision in a lease against subletting, the lessee has a right, as an incident to his estate, to sublet the demised premises, or any part thereof, without the lessor's consent.

2. Unless waived by the terms of the lease, it is essential to the right of re-entry and repossession of the premises for breach of covenant to pay rent, that the landlord make demand of the actual rent due, as required by the rule of the common law.

3. A reservation of rent that is indivisible does not become severed by a severance in the occupation of the demised premises and payment of rent to the lessor by the respective occupants for the portions occupied by each.

4. The acceptance by the lessor of a partial payment of the rent due in advance affirmed the tenancy during the period in respect of which the rent was paid, and operated as a waiver of the notice previously given the lessee by her demanding the surrender of the lease, and as a waiver of her right of re-entry for prior breaches of covenant of which she had knowledge.

5. Having once been waived, no past default on the part of a lessee, then known to the lessor, can afterwards be a ground of re-entry.

6. A provision in a lease giving a right of forfeiture for failure to pay any stipulated installment of rent includes only an entire failure to make payment; and when a lessor accepts a part payment of rent he affirms the lease to the end of the period for which the partial payment is made, and cannot claim a forfeiture for the failure to pay the rest.

7. Where a lessee had been in the habit of paying rent by check, and a check offered in payment of overdue rent was refused by the lessor, not because it was not a valid tender, but solely on the ground that a forfeiture of the lease was claimed, the tender so made and refused should be considered a lawful tender.

8. Where parts of certain monthly installments of an entire rent were paid when due, and the balance was tendered before a forfeiture of the lease had been legally declared, the lessor was precluded from thereafter terminating the lease because of the failure to pay the rent or any part of it for those months, or any part of them, within the time allowed by the lease before the right of re-entry could exist.

9. Where lessors had no right to re-enter the leased premises, the constructive re-entry they attempted to make by procuring attornment from the lessee's subtenant was a substantial interference with the lessee's right to quiet enjoyment of the premises, was unlawful, and was without force in equity.

10. Where premises are occupied under a lease reserving the right to re-enter upon and repossess the premises for refusal or neglect by the lessee to fulfil the covenants thereof, the lessor cannot disturb the lessee in his possession and enjoyment during the term, except under the optional right of forfeiture properly exercised.

11. Where a lessee had incurred no forfeiture of his lease, his subtenant could not, without his consent, change the nature of his (subtenant's) tenancy by recognizing the original lessors as his landlords; and the relative situation of the parties remained unaltered.

12. Where no rights of a lessee under his lease had been forfeited, a lease of a part of the demised premises executed and delivered by the lessor to the lessee's subtenant in possession, for a term not exceeding that of the original lease, was void as to the original lessee.

13. In such case, a lease of the remainder of the demised premises executed and delivered by the lessor to a third person for a term exceeding that of the original lease, did not affect the relation between the lessor and the original lessee, nor the latter's right to possession, under the original lease, since there could be no lawful possession taken of the premises under such lease until the expiration of the original lease.

14. A subtenant cannot surrender to the chief landlord unless the latter has first acquired the intervening leasehold estate.

15. Where the unlawful acts of a landlord necessarily resulted in depriving the tenant of the beneficial enjoyment of the leased premises, the intent to oust him is conclusively presumed.

16. A subtenant is charged with knowledge of the provisions of the original lease.

17. The acceptance by a subtenant of a new lease from the original lessor, when she knew there had been no forfeiture of the original lease, operated as a disclaimer of the relation of landlord and tenant between her and the original lessee, entitling him to consider the sublease as terminated.

18. Wrongful acts of a permanent character done by a landlord in interference of the tenant's possession and amounting to a clear indication of intention by the former that the latter shall no longer continue to hold the premises as tenant, constitute an eviction and suspend the payment of the whole rent by the tenant.

19. The possession of subtenants under subleases from the original lessee of the premises, in equity, continued to be the original lessee's possession to enable him to maintain a suit to quiet title, although one subtenant had wrongfully accepted a new lease from the original lessors and thereafter paid them rent as her landlords, and the other subtenant had wrongfully attorned to them.

20. In such case, equity will give the original lessee full relief by way of a decree quieting his leasehold title and restoring him to the full enjoyment of his estate, and for an accounting, damages, and necessary injunctive relief.

APPEAL IN CHANCERY. Bill seeking to have a certain lease from the defendants to one Sarah R. Manter declared null and void; that a certain lease from the defendants to one Poulos be declared null and void; that the defendants and said Sarah R. Manter and said Poulos be permanently enjoined from setting up any title or claim to certain premises owned by the defendant Lovina M. D. Taft contrary to the terms of a lease executed by the defendants to the plaintiff, and from interfering in any way with the possession of the plaintiff or of his tenants of said premises; and for an accounting by the defendant Lovina M. D. Taft for certain rents received by her for the use of said

premises after the execution of the lease to the plaintiff. Heard on the pleadings and a special master's report at the March Term, 1919, Chittenden County, *Wilson*, Chancellor. Decree for the defendants dismissing the plaintiff's bill, with costs. The plaintiff appealed. The opinion states the case.

*R. E. Brown* and *Cowles & Stearns* for the plaintiff.

*V. A. Bullard* for the defendants.

WATSON, C. J.   The premises in question, consisting of "the drug store and cigar store with basement thereunder, situated on the northwest corner of Church and College Streets in" the city of Burlington, and being the entire first floor and basement of the building on that corner, owned by defendants Taft, in the wife's right, were, by the owners' written lease, duly executed, delivered, and recorded, on March 27, 1913, leased to the plaintiff for the term of ten years from the first day of that month, with the option to the lessee to extend the term for five years from and after the first day of March, 1923, and with covenant for quiet enjoyment. The "drug store" has two rooms, and the "cigar store," one. The latter is sometimes spoken of in the record, also in this opinion, as "shoe shine parlor." The lease creates one entire interest in the tenant, and reserves one entire rent of the whole premises: $1,300 a year, payable in equal monthly installments in advance on the first day of each month, the first payment to be made on April 1, 1913. It also contains a reservation, that if the lessee shall at any time for the space of thirty days refuse or neglect to fulfill the covenants thereof, the lessors shall have the right to enter upon and repossess the premises.

The plaintiff went into possession of the demised premises on or about March 27, 1913. On the 15th day of September, 1914, he sublet the cigar store to Thomas Phillips and Michael Spylios, for the term of one year with the privilege of two years additional, subject to a certain right of option in the sublessor. Soon thereafter each of the subtenants assigned his interest in the term to one George Herritos.

[1]   The plaintiff continued in the possession and occupancy of the drug store and basement until the 29th day of May, 1915, when he sublet the same to Russell W. Manter for the

term of five years, with an option in the latter of extending the term from the day of its expiration to the first day of March, 1923, also with an option on the cigar store. Manter died on or about June 3, 1916, after which time Sarah R. Manter, his widow and executrix, was in possession. September 15, 1915, Mr. Manter exercised his right of option on the cigar store, but leaving the subtenant Herritos therein, and the latter was thus in possession under the aforementioned subletting by the plaintiff, until the bringing of this suit. It is found that Mrs. Taft did not consent to the sublease to Phillips and Spylios. Yet, there being no provision in the original lease against subletting, the tenant had a right, as an incident to his estate, to sublet the demised premises or any part thereof, without the lessor's consent. *Cooney* v. *Hayes*, 40 Vt. 478, 94 A. D. 425; 16 R. C. L. 871, § 374.

Albert N. Gebo acted as agent for Mrs. Taft in collecting rents from the plaintiff, sending the same, when collected, to her. M. G. Rosenberg, the surety on the original lease, acting as agent for the lessee, paid Gebo, as rent in advance on the cigar store, twenty-five dollars for each of the months of August, September, October, and November, 1915. These payments were by checks signed by M. G. Rosenberg and payable to Mrs. Taft; and the checks were received and negotiated by her. The last of these payments was made November 5th, and for that month. After the date last named neither the lessee nor any one in his behalf paid any (separate) rent for the cigar store to Mrs. Taft, though a subsequent tender was made, as presently noticed; but after Russell W. Manter went into possession of the drug store as subtenant, he paid (pursuant to an agreement dated May 28, 1915, discussed further on) the rent reserved in the sublease, directly to her, $83.33 for each successive month in advance, the first payment being for the month of August, 1915, and the last, for the month of March, 1916.

[2] January 25, 1916, Gebo, as Mrs. Taft's agent, delivered to Mr. Manter a written paper, signed by her and bearing that date, demanding the surrender of the original lease on the ground that "the terms of said lease have been violated," and three days later Gebo delivered a like written paper to the plaintiff. Whatever might be said of this paper as a notice to quit, it was in no sense a demand for the payment of rent, and no such demand was ever made by the landlords upon the tenant.

It was essential to the right of re-entry and repossession of the premises for breach of covenant to pay rent, that the landlords make demand of the actual rent due as required by the rule of the common law. This rule is not waived by the terms of the lease, and our statute, touching the matter, applies only in actions of ejectment, and by it the tenant may pay the rent in arrear before final judgment, thereby relieving himself from forfeiture. G. L. 2130; *Willard* v. *Benton,* 57 Vt. 286; *Maidstone* v. *Stevens,* 7 Vt. 487; *Jamaica* v. *Hart,* 52 Vt. 549. Indeed, such a demand is not claimed by the lessors. They say in their answer (also in effect on the facts found) that on July 1, 1916, the plaintiff, by his refusal or neglect to pay rent, was in arrears for the period of four months; that on that day they peaceably entered upon the demised premises and demanded possession thereof from Sarah R. Manter, then in possession as executrix and claiming to hold under the sublease from the plaintiff to her deceased husband; that Mrs. Manter then surrendered her right under the sublease to the lessors and accepted a lease from them and attorned to them as landlords, since which time the latter have been and are in possession of the premises covered by the said sublease; that Herritos also attorned to the lessors and accepted them as his landlords, surrendering all his right, title, and interest in his sublease of the cigar store, and the latter have leased that store to defendant Gus N. Poulos who, under such lease, is in possession thereof. In other words, the lessors say that on July 1, 1916, by reason of the defaults in the payment of rent reserved by the original lease, the re-entry clause gave them a legal right to re-enter upon the demised premises, and they exercised such right peaceably and in a legal manner. This raises an important question which we proceed to consider.

May 28, 1915, an agreement in writing was entered into among Mrs. Taft, the plaintiff, and Mr. Manter, whereby Mrs. Taft, in consideration of the sum of five hundred dollars paid her by the plaintiff, consented to the subletting of any portion or the whole of the demised premises to Manter, one condition being "that the rent paid by the said Manter, to the extent of the rent due me (Mrs. Taft) under Rosenberg's said lease, shall be made to me (Mrs. Taft) or to my agent."

[3] The lease to which reference is thus made is the original, and by the legal effect of the condition whatever rent

Manter so paid Mrs. Taft, he paid as the plaintiff's agent, to be applied on the rent due her under the original lease for the same period in respect of which the rent was paid by the subtenant. But the rent reserved by that lease was a lump sum on the entire demised premises, payable in equal installments in advance on the first day of each month. Each of the payments from Manter to Mrs. Taft (mentioned in a previous paragraph) was in advance for the rent of the drug store (under the sublease) for the ensuing month, and when the money was received by her, it was likewise in advance for the rent due her from the plaintiff on the original lease for the same period—the successive payments together covering the time up to April 1, 1916. The reservation of rent being indivisible, it did not become severed by a severance in the occupation of the premises and a payment of rent to the lessors by the respective occupants for the portions occupied by each. 2 Tayl. Land. & Ten. § 491.

[4, 5] The record shows that the rent under the original lease was fully paid by the plaintiff or his agents in advance, covering all time to the first day of December, 1915. On that day only $83.33 was paid on the rent for December; the same sum was paid January 1, 1916, on the rent for that month; the same sum was paid January 31st, on the rent for the month of February; and the same sum was paid March 1st, on the rent for that month. These payments were by checks payable to Mrs. Taft, which checks she severally received and negotiated, knowing that each such payment left due her and unpaid the sum of twenty-five dollars of the rent for the period for which in each instance the rent was thus partially paid. And as the acceptance by her, January 31st, of the payment on the rent due the next day in advance for the month of February, affirmed the tenancy during the period in respect of which the rent was paid, it operated as a waiver of the notice previously given by her (demanding the surrender of the original lease), and her right of re-entry for prior breaches of covenant, of which she had knowledge. *Murphy* v. *Little,* 69 Vt. 261, 37 Atl. 968; *Mayo* v. *Claflin,* 93 Vt. 76, 106 Atl. 653. And being once waived, no past default on the part of the lessee, then known to the lessors, could afterwards be a ground of re-entry. *Hughes* v. *Farmers Nat. Bank,* 83 Vt. 386, 76 Atl. 33. In like manner the acceptance of the payments in advance on the rent for the succeeding months, severally, to and including March, 1916, operated in

each instance as a waiver of any right of re-entry before existing and known to them.

[6]    It may be said that even then, by the terms of the lease, the right of re-entry could not be exercised until the lessee had for the space of thirty days refused or neglected to fulfil the covenant respecting the full payment of rent for that month, and so there was no waiver because no payment was subsequently received by them.    But the rent was in part received not only for the thirty days, but for the whole period to the first day of April; and such receipt, although not in full of the installment due, was an act equally unequivocal, affirming the lease for that period, a period which extended beyond the time when, if at all, the failure to make full payment worked a breach of covenant, giving the right of re-entry.    It has been held that an insufficient distress cannot vary the principle upon which a distress taken for rent that accrued after the expiration of a notice to quit is a confirmation of the tenancy and a waiver of the right of forfeiture; for the tenancy is equally affirmed, whether the goods and chattels distrained satisfy all the rent. due, or a part only.    It is the act of distraining that shows the intent to waive the forfeiture, not the amount recovered in the proceeding.    *Jackson* v. *Sheldon*, 5 Cow. (N. Y.) 448; *Wilder* v. *Ewbank*, 21 Wend. (N. Y.) 587.    In *Westmoreland, etc., Nat. Gas. Co.* v. *De Witt*, 130 Pa. St. 285, 18 Atl. 724, 5 L. R. A. 731, where, as in the case at bar, a part only of the rent for a given period was paid in advance, it was held that forfeitures are always strictly construed; that the provision giving a right of forfeiture for the failure to pay "any" of the payments of rent provided for in the lease, included only an entire failure to make payment; and that since a part payment was made to and accepted by the lessor, he could not claim a forfeiture for the failure to pay the rest.    The principle there enunciated is included in the statement of the law given in 16 Ruling Case Law, at page 1127, section 647.    And Mr. Taylor says (2 Tayl. Land & Ten. [9th ed.] § 497) that the waiver will result without reference to the amount of rent received, or to the sufficiency of the distress.

The lessors were not obliged to accept less than the full amount of the installment of rent when it fell due; but as they saw fit to do so, thereby affirming the lease to the end of the period for which the partial payment was made, they could not

later make the inconsistent claim that the lease was forfeited within the same period, because of the nonpayment of the rent. *Mayo* v. *Claflin,* cited above.

[7, 8]   Moreover, in the latter part of January, 1916, M. G. Rosenberg offered Gebo a check of seventy-five dollars in payment of the rent on the cigar store for the months of December, 1915, and January and February, 1916, but Gebo refused to take it. Thereupon Rosenberg mailed the check to Mrs. Taft. She did not accept it, and Gebo returned it to Rosenberg. The time when it was offered to Gebo was after the service of the notice upon the plaintiff for the surrender of his lease; but that is of no consequence, since (as held above) the notice was subsequently waived. It appears that Gebo refused to take this check on the ground that a forfeiture of the lease had been, and was, claimed by Mrs. Taft. As before seen, M. G. Rosenberg (the surety on the original lease), acting for the plaintiff, had been in the habit of paying rent by his checks payable to Mrs. Taft, such checks always being received and negotiated by her. The offering of the check under discussion was not a valid tender of money; but no objection was made to the character or quality of the tender. The check was refused solely on the ground that a forfeiture of the lease was claimed. In these circumstances, the tender thus made and refused should be considered a lawful tender. *Curtiss* v. *Greenbanks,* 24 Vt. 536; *McGrath* v. *Gegner,* 77 Md. 331, 26 Atl. 502, 39 A. S. R. 415; *Schaeffer* v. *Coldren,* 237 Pa. St. 77, 84 Atl. 98, Ann. Cas. 1914 B, 175; *Duffy* v. *O'Donovan,* 46 N. Y. 223; *Mitchell* v. *Vermont Copper Min. Co.,* 67 N. Y. 280. A sufficient tender of the sum due as rent on the cigar store for the months named, and in fact the amount due the lessors as rent under the original lease after receiving the $83.33 on rent for each of those months as stated above, being made before, in any legal sense, a forfeiture had been declared, the lessors were precluded from thereafter terminating the lease because of the failure to pay the rent or any part of it for those months or any of them, within the time allowed by the lease before the right of re-entry could exist. *Houghton* v. *Cook,* 91 Vt. 197, 100 Atl. 115.

[9-11]   Since on March 1, 1916, all rent previously due by the terms of the original lease had either been paid or lawfully tendered, it follows that there had been no breach of covenant in such respect, giving the right of re-entry. Yet an oral lease

was then entered into between Mrs. Taft and Russell W. Manter, whereby the latter was allowed to occupy all the premises demised by the original lease, upon condition that he should pay up the arrears of rent on the shoe shine parlor. Accordingly, he then gave Mrs. Taft a check for the sum of one hundred and fifty dollars, to pay the rent for the months of December, 1915, and January, 1916, at twenty-five dollars a month, and for the months of February and March following, at fifty dollars a month. The record states that the payment of these sums formed a part of the lease under which Manter continued in possession as tenant of the original landlords. Just what this means is not quite clear, in view of the fact, also found, that Herritos, as assignee of the term, was in possession of the cigar store under the sublease from the plaintiff to Phillips and Spylios, until the bringing of this suit. We think, however, that the latter finding, taken with the actions of the Manters in tendering and in paying rent as stated in the following paragraph, shows that the so-called oral lease was but an agreement by which Manter, continuing in possession under the lease of his subtenancy, was to and did thereafter recognize the Tafts as his landlords, paying rent to them as such. Since for reasons stated above the Tafts had no right to re-enter March 1, 1916, the constructive re-entry they undertook to make by procuring such attornment was a substantial interference with the plaintiff's right to quiet enjoyment of the leased premises, was unlawful, and without force in equity. *Leader* v. *Moody,* 32 L. T. N. S. 422, 20 L. R. Eq. 745; *Case* v. *Minot,* 158 Mass. 377, 33 N. E. 700, 22 L. R. A. 536. The premises being under a lease to the plaintiff for a term of years, the lessors could not disturb him in his possession and enjoyment during the term, except it be under the optional right of forfeiture, properly exercised. *Stern* v. *Sawyer,* 78 Vt. 5, 61 Atl. 36, 112 A. S. R. 890, 6 Ann. Cas. 356. In the circumstances it was entirely incompetent for Manter, without the plaintiff's consent, to change the nature of his tenancy by recognizing the original lessors as his landlords. *Swift* v. *Gage,* 26 Vt. 224. The relative situation of the lessors, the plaintiff as lessee, and Manter as sublessee, remained unaltered. The original lease continued in force and forms the basis upon which the rights of the parties are to be determined, unless something thereafter took place, materially changing their legal or equitable status. *Smith* v. *Blaisdell,* 17 Vt. 199.

[12, 13]   On the first day of April, 1916, the attorney and agent for Mr. and Mrs. Manter offered Gebo the sum of one hundred and ten dollars in gold, it being the rent for the entire premises, and in May, June, and July, following, the same attorney and agent offered Gebo the same sum in gold.   Gebo refused to receive the money so severally offered, and the said sums were kept on deposit in the Chittenden County Trust Company, Gebo being told by said attorney and agent that the money was awaiting him there at any time.   The amounts of money thus offered were for the whole rent each month in advance, as specified in the original lease, though slightly in excess of the sum due. Each of these offers constituted a legal tender (which was kept good), made before any forfeiture had been legally declared, and precluded the termination of the lease by reason of default in payment of rent for the successive periods to August 1, 1916.   It further appears that Mrs. Manter paid all rent due to the date of a settlement she had with Mrs. Taft in July, which would include the rent due on the first day of that month for the period to August 1st, the last period covered by the tenders mentioned.

July 1, 1916, defendants Taft, by a written lease executed in due form, demised unto Sarah R. Manter the drug store and basement until May 29, 1920, with an option in the lessee to extend the term to March 1, 1923, and again to extend it until March 1, 1928, which lease was duly recorded.   By this lease rent was reserved in the sum of eleven hundred and sixty dollars yearly, to be paid in equal monthly installments on the first day of each month in advance.   The lease contains a provision as follows:   ''The said lessee herein shall forthwith assign all the right, title and interest of the estate of Russell W. Manter in a certain lease of said store and what is known as the shoe shine parlor, by Russell W. Manter to George Herritos, dated August 10, 1915, including the right as mentioned therein, to terminate the same September 15, 1916, reserving, however, the rent due said Manter's estate under said last-mentioned lease, which rent is to be paid to the said Lovina M. D. Taft, under other provisions of this lease.''   Accordingly the assignment thus provided for was made by Mrs. Manter on the same day as was the lease from the Tafts to her, and manifestly the two should be considered together as forming one and the same transaction.   This lease was assigned by Mrs. Manter to J. Edward Reeves January 5, 1917, which assignment was also recorded.

The Tafts, on the same day of executing the lease last named, also executed in due form a written lease of the cigar store to Gus N. Poulos for the term of twelve years from the 15th of September, 1916, or as soon thereafter as the lessors could obtain possession thereof "from the present tenants," the reserved rent being eight hundred and forty dollars yearly, payable in monthly installments in advance. This lease was put on record after these proceedings were commenced.

From the fact that at the time of the execution and delivery of the two aforementioned leases the Tafts had no right to exercise their option of re-entry, it follows that they still had only an estate in reversion without any present right of possession. They had no such interest in the premises as they undertook to convey to Mrs. Manter; therefore their lease to her was void as against the plaintiff, although their acts in that respect and in connection therewith worked a substantial and unlawful interference with the rights of the plaintiff in the possession and enjoyment of his leasehold estate.

The lease to Poulos has a somewhat different standing. It is for a term exceeding that of the original lease, even though the latter be extended under the option given therein. At most, however, it is but a lease *interesse termini,* which is only a right and not an estate; and until the *interesse termini* ripens into an estate, which will not be until the expiration of the lease to the plaintiff, there can be no lawful entry upon and into possession of the premises; and consequently it did not affect the relation existing between the lessors and the plaintiff, nor the right of the latter to possession. 1 Tiff. Land. & Ten. § 146d; *Hyde* v. *Warden* (C. A.), 3 Exch. D. 121, 37 L. T. 567; *Edwards* v. *Wickwar,* 1 L. R. Eq. 403. Therefore, the record shows that Poulos, without right and paying rent to the original lessors, went into possession of the cigar store, and is so continuing.

[14]   The claim that Mrs. Manter surrendered to the Tafts the sublease under which she was in possession of the demised premises cannot be sustained. A subtenant cannot surrender to the chief landlord, unless the latter has first acquired the intervening leasehold estate, which in this instance had not been done. 2 Shep. Touch. *303; 2 Tiff. Land. & Ten. 1311.

[15-17]   But the landlords will be presumed to have intended the natural consequences of their acts; and since their acts shown in the respects now under discussion, necessarily re-

sulted in depriving the plaintiff of the beneficial enjoyment of
the leased premises, the intent to oust him is conclusively pre-
sumed. *Powell* v. *Merrill*, 92 Vt. 124, 103 Atl. 259. Indeed,
this is also shown by their answer in the claim there set forth
that the lease to the plaintiff had become forfeited, that they
claimed the right of possession, and that since Mrs. Manter ac-
cepted the new lease from them as her landlords, July 1, 1916,
as stated above, they "have been and now are in lawful posses-
sion of the said premises." The sublease, under which Mrs.
Manter was in possession, was for years, and had some years yet
to run. She was charged with knowledge of the provisions of
the original lease, and she must have known that, acting by their
attorney and agent, she and her husband had tendered to the
agent of the Tafts, in four successive months, beginning with
April 1, 1916, and ending with July, money in gold sufficient to
cover all rent due under the original lease up to August 1, 1916.
She therefore knew on July 1 that there could be no forfeiture
of that lease on the ground of nonpayment of rent, and conse-
quently she must have further known that the claim of for-
feiture then made by the original lessors was in fraud of the
rights of the plaintiff as their lessee. In these circumstances we
think her acts in the respects named operated as a disclaimer
of the relation of landlord and tenant between her and the plain-
tiff, entitling the latter to consider the sublease as terminated.
2 Tayl. Land. & Ten. § 522; 2 Tiff. Land. & Ten. 1356, 1357;
*Doe dem* v. *Evans,* 9 Mees. & W. 48; *Doe dem* v. *Frowd,*
4 Bing. 557; *Duke* v. *Harper,* 6 Yerg. (Tenn.) 280, 27 A. D. 462;
*Blue* v. *Sayre,* 32 Ky. 213; *Willison* v. *Watkins,* 3 Pet. 43,
7 L. ed. 596. That the plaintiff considered his subtenant's acts
as constituting such a disclaimer appears by his bringing this
suit to quiet title, praying, among other things, that the Tafts,
Mrs. Manter, and Poulos be permanently enjoined from setting
up any title or claim to the premises, contrary to the terms of
the lease to the plaintiff, and from interfering with his posses-
sion thereunder.

[18] The wrongful acts done by the landlords in inter-
ference with the plaintiff's possession, were of a grave and
permanent character, amounting to a clear indication of inten-
tion on the former's part that the latter should no longer con-
tinue to hold the premises as tenant. Such acts constituted an
eviction and suspended the payment of the whole rent by the

tenant. *Powell* v. *Merrill,* cited above; *Keating* v. *Springer,*
146 Ill. 481, 34 N. E. 805, 37 A. S. R. 175, 22 L. R. A. 544;
*Grommes* v. *St. Paul Trust Co.,* 147 Ill. 634, 35 N. E. 820, 37
A. S. R. 248.

[19]   The possession of Mrs. Manter and Herritos under
subleases given by the plaintiff, was the possession of the plain-
tiff.   Mrs. Manter, being so in possession, wrongfullly accepted
a lease from the original lessors and thereafter paid them rent
as her landlords, an incompetent thing for her to do.   Although
Herritos continued in possession under such sublease until the
bringing of this suit, he sooner or later wrongfully attorned to
the original lessors.   We think in equity the possession of both
Mrs. Manter and Herritos continued to be the possession of the
plaintiff to enable him to maintain a suit to quiet title.   *Blanch-
ard* v. *Tyler,* 12 Mich. 339, 86 A. D. 57; *Stewart* v. *May,* 111 Md.
162, 73 Atl. 460, 18 Ann. Cas. 856; 16 R. C. L. 622, § 102.

[20]   Clearly the plaintiff is entitled to a decree quieting
his leasehold title and restoring him to the full enjoyment of
his estate; also to an accounting by defendants Taft for all
rents and profits received by them on the demised premises,
from and including the time of entering into the so-called "oral
lease" with Russell W. Manter to the time when such an ac-
counting is had, deducting from the amount so found, the rents
reserved by the terms of the original lease; also for such other
damages, if any in equity, the plaintiff has suffered by reason
of the wrongful interference by the defendants with his rights
in the premises.   In addition, the plaintiff should be granted
such injunctive relief as may be deemed necessary for his pro-
tection in the enjoyment of his said leasehold estate according
to his rights.

*Decree reversed and cause remanded with directions that
a decree be entered for the plaintiff, and an accounting had, and
damages assessed, all in conformity with the views expressed in
this opinion, with costs to the plaintiff.*